MADAN AHLUWALIA, ESQ. (SBN 175664)
Ahluwalia Law Professional Corporation
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (650)331-1968
Facsimile: (650)204-6813

Attorney for Plaintiff
SUMAN K. TOOR

<u>UNITED STATES DISTRICT COURT</u>

<u>NORTHERN DISTRICT OF CALIFORNIA</u>

| | |
|---|---|
| SUMAN TOOR | Case No.: 09—2850 MMC |
| Plaintiff, | SECOND AMENDED COMPLAINT FOR: |
| v. | 1) Breach of Fiduciary Duty; |
| | 2) Fraud; |
| | 3) Negligence; |
| FARHAD KHAN, an individual; VANDA | 4) Violation of TILA; |
| KARAMEHMEDOVIC, an individual; | 5) Violation of RESPA; |
| MORTGAGEIT, INC., a business entity form | 6) Negligent Misrepresentation; |
| unknown; ONEWEST BANK, FSB, a | 7) Unfair Business Practices; |
| business entity form unknown; and all persons | 8) Wrongful Foreclosure |
| unknown, claiming any legal or equitable | |
| right, title, estate, lien or interest in the | |
| property described in this complaint adverse | |
| to Plaintiffs' title thereto, and DOES 1 | |
| through 30, inclusive, | |
| Defendants. | |

Plaintiff, SUMAN TOOR, complains against Defendants, and each of them, as follows:

## PARTIES

1.      Plaintiff SUMAN K. TOOR is an individual residing in this state and was the owner of the subject real property located at 717 South Idaho Street, San Mateo, CA 94404-1419 (hereinafter "the Subject Property").

2.      On information and belief, Defendant FARHAD KHAN ("KHAN") is, and at all times mentioned herein was, an individual residing in the State of California and working as a licensed real estate broker, Department of Real Estate license number 01837141.  During the time which these events transpired, Defendant KHAN was acting as an agent for American Mutual Financial Services (AMFS).  On information and belief, AMFS has since gone out of business.

3.      On information and belief, Defendant VANDA KARAMEHMEDOVIC ("KARAMEHMEDOVIC") is, and at all times mentioned herein was, an individual residing in the State of California and working as an assistant to Defendant KHAN.

4.      On information and belief, Defendant MORTGAGEIT, INC. ("MORTGAGEIT") is, and at all times mentioned herein was, a New York corporation doing business in the State of California and the County of San Mateo.  MORTGAGEIT'S business address is 60 Wall Street, NYC60-4006, New York, NY 10005.  Its agent for service of process as listed with the California Secretary of State is CT CORPORATION SYSTEM, 818 West Seventh Street, Los Angeles, CA 90017.  On information and belief, Plaintiff alleges that MORGAGEIT was the original "lender" on the note.

5.      On information and belief, Defendant OneWest Bank, FSB (ONEWEST) is the successor to Indymac Bank ("Indymac"), and at all times relevant herein was, a corporation doing business in the State of California and the County of Solano.  On information and belief,

ONEWEST's corporate headquarters are located at 888 East Walnut Street, Pasadena, CA 91101.  On information and belief, Indymac was acting as a "servicer" of Plaintiff's loan until it was taken over by ONEWEST.  Therefore, all allegations involving Indymac are alleged against its successor ONEWEST.

6.     The Defendants named herein "all persons unknown, claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title thereto and as DOES 1 through 10" (hereinafter sometimes referred to as "the unknown Defendants") are unknown to Plaintiff.  Plaintiff is informed and believes, and on that basis alleges that each fictitiously named herein as a DOE is responsible for the events and happenings hereinafter referred to, and thereby proximately caused the injuries and damages to Plaintiff as hereinafter alleged.  Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendants when ascertained.

7.     Plaintiff is informed and believes, and on that basis alleges that at all times mentioned herein, the unknown Defendants are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers, and co-conspirators of each and every other named or unnamed Defendant in this Complaint.  Plaintiff is informed and believes, and on that basis alleges that each of such Defendants is, and at all relevant times herein, was acting within the scope of their authority as such agents, employees, or alter-egos with permission and consent of the remaining named and unnamed Defendants.

8.     As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth in Lending Act ("TILA") (15 U.S.C. §§ 1601-1666j) and with the Act's corresponding Regulation Z ("Regulation Z") (24 C.F.R. §§ 3500.1-

3500.17), as well as the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. §§ 2601 et seq.) and RESPA's corresponding Regulation X (Regulation X") (24 C.F.R. §§ 3500, et seq.).

9.      Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission were authorized by corporate managerial officers or directors, and that the act or omissions were ratified by the officers and directors of the corporation or business entity.

10.     While the complained of loan was originated by Defendants MORTGAGEIT, KHAN and KARAMEHMEDOVIC, all subsequent holders of the note took the note subject to all defenses against Defendants MORTGAGEIT, KHAN and KARAMEHMEDOVIC, and any other successors to the note and Deed of Trust.

### JURISDICTION

11.     This Court has jurisdiction over this case and the parties herein because all parties reside in or conducted business in the County of San Mateo, California.

12.     Venue is proper in this Court because the subject property is located at 717 South Idaho Street, San Mateo, CA 94404-1419.

### FACTUAL ALLEGATIONS

13.     In or around October 2006, Plaintiff decided to refinance her home.  She used the services of Defendant KHAN.  Plaintiff was told by KHAN that a month after the refinance her home loan her payments would be $1600.  She asked if it would be a negative amortizing loan, and Defendant KHAN assured her that it would not.  She also informed him that she was currently unemployed and did not have an income.  Defendant KHAN assured Plaintiff that this was not a problem.

14.     During the loan application process, Plaintiff was not given a Mortgage Loan Origination Agreement as required by California Law.  KHAN and KARAMEHMEDOVIC's failure to comply with this law invalidates their role in the transaction and any payment of fees to the Defendants  KHAN and KARAMEHMEDOVIC resulting from this failure to comply is an illegal kickback transaction under RESPA (24 C.F.R. §3500.7).

15.     During the application process, Plaintiff was not given an accurate federally-required Good Faith Estimate ("GFE") within the time period allowed.  Pursuant to Regulation X of RESPA (24 C.F.R. § 3500.7) the GFE must be provided within three business days of the loan application.  Defendants did not comply with this requirement.

16.     Plaintiff did not receive a HUD-1 Settlement Statement one day before the close of escrow for final inspection.  Plaintiff should have been advised of her right, but Defendants failed to do so.  Because Plaintiff did not receive the HUD-1 settlement statement, she did not understand, when she signed the loan documents at closing, that MORTGAGEIT was paying an extraordinary fee of $28,000.00 for placing Plaintiff into this loan.  Had Plaintiff been aware of this payment, she would not have signed for the loan because she would have realized that MORTGAGEIT would not pay an extraordinary fee to KHAN and KARAMEHMEDOVIC if they were placing her into a competitive loan product.

17.     Around 10:30 p.m. on the closing date, Defendants KHAN and KARAMEHMEDOVIC showed up at Plaintiff's house asking her to sign documents.  While she was signing, Defendants hurried her through the documents, directing her to sign without reading; not allowing her to ask questions about what she was signing, and not giving her answers to the questions she was asking about the documents.  Both Defendant KAHN and KARAMEHMEDOVIC distracted Plaintiff with irrelevant chatter and did not explain the

documents, except when they made misleading representations about what the documents said, as alleged below.

18.     At one point Plaintiff asked Defendant KAHN if the loan was a negative amortizing and he said, "No."

19.     Defendants KAHN and Defendant KARAMEHMEDOVIC represented to Plaintiff that Defendant KARAMEHMEDOVIC was a notary and presented Plaintiff with a notary journal.  Plaintiff signed the documents believing that Defendant KARAMEHMEDOVIC was an actual notary and that her signature was being legally notarized.  On information and belief, neither of the two was a notary.

20.     Several times during the signing, Plaintiff noticed items that she had not agreed to (such as a prepayment penalty) and questioned KAHN and KARAMEHMEDOVIC about these inaccuracies.  When Plaintiff asked again about the negative amortizing loan issue, Defendant KAHN told Plaintiff that he could "fix these things after closing."  Plaintiff was told by Defendant KAHN, that "these are not the final documents" that she was signing since "they could amend them at the time of closing."  Thus Plaintiff reasonably believed this "closing" was not final.

21.     A review and recalculation of the final Truth-in-Lending statement from the Plaintiff's loan documents reveals that the Finance Changes has been overstated.

22.     Plaintiff never received a complete copy of her Right to Cancel in violation of 12 C.F.R. § 226.17 and 12 C.F.R. § 226.23.  An examination and review of loan documents revealed that there was no midnight expiration date when the rescission period would end.  With no midnight expiration time, it was confusing to Plaintiff when the Right to Cancel might expire.

23.     The next day, as Plaintiff was concerned about what she had signed and felt uncomfortable with the procedure, she wrote out a notice of cancellation on piece of paper and faxed the notice of cancellation from a Kinko's store to escrow officer Elena Verde.  Ms. Verde called Plaintiff back and told her that her notice was unacceptable because the cancellation had to be on "their form."  Plaintiff searched for a cancellation form in the loan documents she was given but could not find one.  Ms. Verde then faxed one to Plaintiff.

24.     Plaintiff signed the notice of cancellation and faxed it to Chicago Title Company.  Thereafter Defendant KHAN called Plaintiff and said that she should keep the loan because it was the best loan for her.  Plaintiff told Defendant KHAN that she was worried about her prior lender's prepayment penalty, and Defendant KAHN assured her not to worry about it because "Mortgageit will pay for it."  Thus, Plaintiff relied on KAHN's misrepresentation about the prepayment penalty and did not insist on the cancellation that she had faxed.  Had she known the truth, she would have maintained that she had cancelled the loan.

25.     On information and belief, Plaintiff did in fact rescind the loan when she faxed the cancellation notice.  The notice was in writing, and was not voluntarily withdrawn – any withdrawal was coerced through misrepresentations - or amended or negated by a subsequent writing.

26.     Plaintiff much later became aware that Defendant MORTGAGEIT did not pay the prepayment penalty.  It was added to the amount owed by Plaintiff to Defendants on the note.

27.     At some point after closing, ONEWEST (then Indymac) began servicing Plaintiff's loan.

28.     Plaintiff was unable to pay on the onerous loan because it was not the loan she believed she was getting.  Plaintiff became in arrears on the loan payments.Therefore ONEWEST initiated foreclosure proceedings.

29.     During the time of July 2008 until the property was eventually sold, Plaintiff was in constant contact with Defendant ONEWEST and made many attempts to modify the loan.  On one occasion, prior to the sale date, Plaintiff was told by "Representative One" that she needed to make two payments and that the sale date would be postponed and the loan would be evaluated for modification.  The representative said she would send her the necessary paperwork.  When she did not receive the paperwork, Plaintiff called again and spoke with a different representative ("Representative 2").  Apparently, ONEWEST had already determined that she met the threshold requirements for a loan modification.

30.     Representative 2 told plaintiff that she needed to send more than two months' payment.  Yet, Plaintiff was then put on hold for approximately thirty minutes and disconnected, so she could not determine if Representative 2's demand for more money was correct.

31.     Since Plaintiff was disconnected and could never confirm what Representative 2 said, and because of the urgency of the situation, Plaintiff wired $9600.00 to ONEWEST to cover two months' payments on the day before a trustee's sale of the Subject Property.  Plaintiff made that payment and therefore Defendants had no right to exercise the power of sale.

32.     Based upon the prior representations made to her by the representative of ONEWEST and because she received the modification packet as promised, Plaintiff believed that because she tendered $9600.00, the sale of her property would be postponed and her loan would be evaluated for modification.

33.     After Plaintiff sent in the payment for $9600.00 ONEWEST had faxed a loan modification application so the details of the loan modification could be formalized.  This occurred on the day before the trustee's sale.  Plaintiff believed this was confirmation that the modification was in place.

34.     One effect of the faxing of the modification papers and Plaintiff's advancing fees was to invalidate any notice of a trustee's sale.  Accordingly, the trustee's sale was without notice.

35.     Plaintiff states that she never received an effective Notice of Trustee Sale, and was only made aware of the completed sale and eviction proceedings after receiving a Three-Day "Notice to Quit" from individuals who gained title to the property following the trustee's sale.

36.     Plaintiff was evicted by persons or an entity who took title to her property following the trustee's sale.

37.     When Plaintiff was evicted from her home, she was living there with her young daughter who was in school.  Despite her best efforts, she was unable to stop the eviction by raising the issues alleged herein.  On information and belief, had she had a notice and opportunity to be heard, Plaintiff could have raised the issues alleged in this complaint and not been evicted.  Unfortunately, she was evicted through a summary proceeding.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FIRST CAUSE OF ACTION
### Breach of Fiduciary Duty
(Against Defendants KHAN and KARAMEHMEDOVIC)

38.     Plaintiff repeats, re-alleges and hereby incorporates the allegations above as though set forth in full.

39.     California law imposes upon mortgage brokers, as fiduciaries, the same obligation of undivided service and loyalty that it imposes on a trustee in favor of a beneficiary. Defendants KHAN and KARAMEHMEDOVIC held a fiduciary relationship with Plaintiff and owed Plaintiff fiduciary duties of utmost loyalty, good faith and diligence.

40.     Defendants KHAN and KARAMEHMEDOVIC breached their duty by, *inter alia*:

    i.     Inducing Plaintiff to sign loan documents by concealing and misrepresenting the true terms of the loans;

    ii.     Failing to follow proper underwriting procedures, and in turn, representing they "qualified" Plaintiff for a loan that she did not have income or employment to support;

    iii.     Qualifying Plaintiff for a loan that was unaffordable to her where it was reasonably foreseeable that Plaintiff would incur bankruptcy or go into default;

    iv.     Providing Plaintiff with an inaccurate and misleading TILA disclosure;

    v.     Failing to explain the loan documentation despite Plaintiff's questions;

    vi.     Charging Plaintiff a Yield Spread Premium of $28,000.00 despite providing nothing of value in return;

    vii.     Misrepresenting to Plaintiff that MORTGAGAEIT would pay her prepayment penalty;

    viii.     Using undue influence to stop Plaintiff from canceling the loan;

    ix.     Concealing that no real notary was at the "closing";

    x.     Misrepresenting that the late-night signing of the documents was not the final loan closing;

    xi.     Obtaining Plaintiff's signature on documents by telling her that they were "not the final documents" and could be "amended" later; and

xii.    Exercising "bait and switch" tactics by promising one loan, and then providing her another loan.

41.    Defendants KHAN and KARAMEHMEDOVIC engaged in the conduct alleged herein for the purpose of advancing their own financial interest and in callous disregard of the foreseeable consequences to Plaintiff.

42.    As a result of the aforementioned acts Plaintiff sustained damages in an amount not yet ascertained to be proven at trial.

43.    The conduct of KHAN and KARAMEHMEDOVIC was a substantial factor in causing the damages sustained by Plaintiff, and as a direct, proximate and legal result of the above alleged breach of fiduciary duty, Plaintiff has suffered and will continue to suffer damages in an amount not yet ascertained to be proven at trial.

44.    Defendants KHAN and KARAMEHMEDOVIC are guilty of malice, fraud or oppression, as defined in California Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages, punitive damages to make an example of and punish Defendants KHAN and KARAMEHMEDOVIC.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
### Fraud
(Against Defendants KHAN, KARAMEHMEDOVIC, and MORTGAGEIT)

45.    Plaintiff repeats, re-alleges and hereby incorporates the allegations above as though set forth in full.

46.    California Civil Code § 1572 states that fraud exists when any of the following act and situations occur.  Actual fraud consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party:

¶ (a) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (b) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; (c) The suppression of that which is true, by one having knowledge or belief of that fact; (d) A promise made without any intention of performing it; or (e) Any other act fitted to deceive.

11

47.     KHAN and KARAMEHMEDOVIC committed fraud and deceptive acts by purposefully withholding loan documents from Plaintiff and by tricking her into signing documents at the late-night loan closing that had far different, and far worse, loan terms than they promised Plaintiff.

48.     KHAN and KARAMEHMEDOVIC also misrepresented that Plaintiff was signing the loan documents in the presence of a notary.  Plaintiff relied on this statement, and believed that the presence of a notary would mean that she was receiving a sufficient explanation of the loan documents.  Plaintiff also believed since a notary was present when KHAN and KARAMEHMEDOVIC said that the documents could be amended later, such an amendment would in fact be permitted.

49.     Plaintiff reasonably relied on the representations of KHAN and KARAMEHMEDOVIC because she believed their representations that they had professional expertise in loan disclosure and documentation, and expertise in loan closings and notarization. Further, she did not understand the extraordinary compensation KHAN and KARAMEHMEDOVIC were receiving from MORTGAGEIT.  Had she understood that they were receiving this compensation, she would have realized that MORTGAGEIT had incentivized this fraudulent behavior.

50.     KHAN and KARAMEHMEDOVIC made the misrepresentations alleged above with the intent to induce Plaintiff's actual reliance.

51.     The conduct of Defendants KHAN and KARAMEHMEDOVIC was a substantial factor in causing the damages sustained by Plaintiff, which include, among other things, the loss of her home, the loss of interest and fees she paid before foreclosure, and emotional distress.

52.     By compensating Plaintiff's agents KHAN and KARAMEHMEDOVIC for procuring this loan with the extraordinary yield spread premium and incentivizing their deceptive behavior, KHAN and KARAMEHMEDOVIC , MORTGAGEIT employed them as MORTGAGEIT's agents.

53.     Accordingly, KHAN and KARAMEHMEDOVIC  were acting as MORTGAGEIT's agents, and MORTGAGEIT therefore participated in, and aided and abetted this fraud, and should be liable independently and vicariously for the actions of KHAN and KARAMEHMEDOVIC.

54.     Defendants KHAN, KARAMEHMEDOVIC, amd MORTGAGEIT are guilty of malice, fraud or oppression, as defined in California Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages, punitive damages to make an example of and punish Defendants KHAN, KARAMEHMEDOVIC, and MORTGAGEIT.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION
### Negligence
(Against Defendants MORTGAGEIT, KHAN and KARAMEHMEDOVIC)

55.     Plaintiff repeats and re-alleges all paragraphs above, and incorporates them by reference as though fully set herein.

56.     Because a mortgage loan broker and a mortgage loan lender are required to exercise reasonable care and diligence in any transaction and are bound to exercise their skill for the benefit of the principal, the agent is liable for any damages suffered by the principal as a result of any negligence in the performance of his or her agency duties.

57.     Normally, MORTGAGEIT would not owe a duty to Plaintiff, a borrower. However, MORTGAGEIT undertook to control Plaintiff's agents KHAN and

Second Amended Complaint

KARAMEHMEDOVIC by paying them yield spread premium in return for placing Plaintiff into a high-cost loan.  In so doing, MORTGAGEIT assumed a duty to Plaintiff, or, alternatively, became liable for her agents', KHAN and KARAMEHMEDOVIC's, breach of their duty to Plaintiff.

58.     By employing KHAN and KARAMEHMEDOVIC as its agents through the promise of extraordinary yield spread premium payments, MORTGAGEIT incentivized KHAN and KARAMEHMEDOVIC to act contrary to their other principal's (Plaintiff's) best interest.

59.     A reasonably prudent mortgage loan broker would not have engaged in the conduct and acts herein alleged.

60.     Defendants MORTAGAEIT, KHAN and KARAMEHMEDOVIC, failed to properly consider, investigate, evaluate or audit Plaintiffs' loan applications and/or ability to repay loans and/or the actions of their agents.

61.     Defendants MORTGAGEIT, KHAN and KARAMEHMEDOVIC  knew or should have known to utilize the best practices for underwriting, originating and issuing loans when considering the loan to Plaintiff, but negligently failed to do so.

62.     Defendants MORTGAGEIT, KHAN and KARAMEHMEDOVIC, breached their duty (or encouraged another to breach his or her duty) by encouraging Plaintiff to sign for loans with different terms that those they had represented to Plaintiff during the application process.

63.     Defendants KHAN and KARAMEHMEDOVIC undertook to provide the Plaintiff low fixed interest-rate loan for the refinancing of her home and not a negative amortization loan.

64.     Defendants MORTGAGEIT, KHAN and KARAMEHMEDOVIC acted negligently in the performance of the duties they assumed. They did not place her into the proper

loan, and each of them failed to supervise or review the conduct of the other despite their duties to the Plaintiff.

65.     As a foreseeable result of said negligence, Plaintiff was given a loan that caused her to lose her home and incur damages in the form of lost interest payments and fees, among other damages.

66.     By the conduct as alleged herein, Defendants MORTAGAEIT, KHAN and KARAMEHMEDOVIC are the proximate cause of damages sustained by Plaintiff in an amount to be proven at trial but not yet ascertained.  Plaintiff has suffered and will continue to suffer damages.

WHEREFORE Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### Unlawful, Unfair, and Fraudulent Business Practices
### Pursuant To Cal. Bus. & Prof. Code § 10130, *Et Seq.*
(Against Defendants KHAN and KARAMEHMEDOVIC)

67.     Plaintiff repeats and re-allege the paragraphs above as though fully set forth herein.

68.     Commencing in or about October 2006, Defendants, and each of them, have committed the following acts of unlawful and fraudulent business practices, as defined by Business and Professions Code § 10130, *et seq.*, by:

a.     Engaging in the business, acting in capacity of, advertising and/or assuming to act as a real estate broker and/or real estate salesman by doing the acts described in Business & Professions Code § 10131 within this state without obtaining a real estate license in violation of Business & Professions Code § 10130;

b.     Employing and compensating an unlicensed real estate salesman/salesperson in violation of Business & Professions Code § 10137;

c.      Failing to deliver a copy of the executed and controlling loan documents to Plaintiffs in a timely manner as set forth in and in violation of Business and Professions Code §§ 10142 and 10240;

69.      The above practices are violations of the Business and Professions Code and therefore constitute an unlawful business practice within the meaning of Business and Professions Code § 10130, *et seq*. These practices are also unfair because that the Defendants employed them to mislead Plaintiff and injure her. The aforementioned acts, omissions, and practices were and are likely to mislead the general public in that unlicensed individuals rely upon real estate professionals to act diligently and competently in compliance with the applicable Business and Professions Code provisions.

70.      As a direct and proximate result of the Defendants' conduct, Defendants, and each of them, have received funds that rightfully belong to Plaintiff and have caused Plaintiff to suffer substantial financial harm due to the improperly obtained loan as set forth herein.

WHEREFORE, Plaintiff prays for relief as set forth below.

**FIFTH CAUSE OF ACTION**
**Violation of the Truth in Lending Act, 15 U.S.C. §1601, et seq. and**
**Regulation Z, 12 C.F.R. § 226, et seq.**
**(Against Defendant MORTGAGEIT)**

71.      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72.      Defendant MORTGAGEIT is a "creditor" within the meaning of TILA as implemented by Regulation Z.

73.      Defendant MORTGAGEIT violated TILA and Regulation Z by failing to provide Plaintiff with appropriate material disclosures required under TILA and by not taking into account Plaintiff's ability to repay the loan.

74.     Any and all statute(s) of limitations relating to disclosure and notices required pursuant 15 U.S.C. § 1601, *et seq*. should be equitably tolled due to Defendant MORTGAGEIT's failure to effectively provide the required disclosures and notices.

75.     As a direct and proximate result of Defendant MORTGAGEIT's conduct Plaintiff was and continues to be damaged in an amount according to proof but not yet ascertained including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

76.     Defendant MORTGAGEIT was unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendant MORTGAGEIT.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION
### Unfair Business Practices
(Against Defendants MORTGAGEIT and ONEWEST)

77.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78.     California Business and Professions Code § 17200 prohibits any unlawful, unfair or fraudulent business act or practice.

79.     Defendant MORTGAGEIT, through its own actions as alleged above and those of KHAN and KARAMEHMEDOVIC has committed acts of unfair business practices defined by California Business and Professions Code § 17200, *et seq*.

80.     Defendant ONEWEST committed acts of unfair business practices defined by California Business and Professions Code § 17200, *et seq*. by engaging in the acts and practices as alleged above, including but not limited to breaking the promise it made to Plaintiff that if she made a payment, the sale of her home would be postponed and her loan would be evaluated for modification.

Second Amended Complaint

81.     As a direct and proximate result of the aforementioned acts by Defendants ONEWEST and MORTGAGEIT, Plaintiff sustained damages in an amount not yet ascertained to be proven at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SEVENTH CAUSE OF ACTION
### Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607
(Against Defendant MORTGAGEIT)

82.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

83.     Section 8(a) of RESPA, 12 U.S.C. § 2607(a), provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

84.     Section 8(b) of RESPA, 12 U.S.C. § 2607(b), provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

85.     Any and all statute(s) of limitations relating to RESPA should be equitably tolled due to Defendant MORTGAGEIT's failure to effectively provide the required disclosures and notices.

86.     Defendant MORTGAGEIT violated RESPA by using yield spread premium payments to compensate unlawful mortgage broker behavior, including the broker's breach of fiduciary duty to the borrower.

87.     Plaintiff was charged a yield spread premium by Defendant MORTGAGEIT in the amount of $28,000.00.  This yield spread premium increased Plaintiff's cost of borrowing - the interest she paid on the loan.

88.    The purpose and effect of the yield spread premium was for MORTGAGEIT to compensate KHAN and KARAMEHMEDOVIC for placing Plaintiff into a loan that was not competitive with other loans that Plaintiff would have qualified for.

89.    These yield spread premiums are illegal and in violation of RESPA, as the payments are not reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed. Indeed, the "services" performed by KHAN and KARAMEHMEDOVIC were worthless as they placed Plaintiff into a loan which was worse than she could have otherwise obtained.

90.    An ordinary lender of money does not owe a duty to a borrower.  However, a lender can assume a duty when the lender assumes duties beyond those of mere fairness and honesty in marketing its product.

91.    MORTGAGEIT is liable to Plaintiff for the actions of KHAN and KARAMEHMEDOVIC because the evidence elicited thus far, including the $28,000.00 yield spread premium that MORTGAGEIT paid KHAN and KARAMEHMEDOVIC, demonstrates that MORTGAGEIT directly participated in the brokers' breach of their duty to Plaintiff and paid an illegal kickback to MORTGAGEIT.

92.    As a direct and proximate result of Defendant MORTGAGEIT's violations, Plaintiff was and continues to be damaged in an amount according to proof but not yet ascertained including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

93.    Defendant MORTGAGEIT was unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendant MORTGAGEIT.

WHEREFORE, Plaintiff prays for relief as set forth below.

### EIGHTH CAUSE OF ACTION
**Wrongful Foreclosure**
(Against Defendant ONEWEST)

94.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

95.    California Civil Code § 2923.5 requires all lenders or the servicers acting on their behalf to contact borrowers who obtained loans between January 1, 2003 and December 31, 2007 to discuss foreclosure avoidance alternatives before beginning the foreclosure process.  Violation of this requirement is evidence of wrongful foreclosure and this statute imposes a duty, the breach of which is actionable.

96.    ONEWEST did not make diligent efforts to discuss foreclosure avoidance with Plaintiff.  Although discussions occurred, ONEWEST and Quality Loan Services (which acted on ONEWEST's behalf) foreclosed while the discussions were ongoing and despite Plaintiff's sending payment to postpone foreclosure and reinstate the loan.  Accordingly, these discussions were not diligent efforts at foreclosure prevention.

97.    Additionally, Defendants ONEWEST and Quality Loan Services instituted foreclosure proceedings without properly notifying Plaintiff while Plaintiff and Defendant ONEWEST were in negotiations for reinstatement.

98.    Prior to the filing of NOD in this matter, Defendants ONEWEST failed to make a good faith effort to discuss foreclosure avoidance alternatives with Plaintiff as outlined above in this complaint.

99.    As a direct and proximate result of the aforementioned acts by Defendants ONEWEST, Plaintiff has sustained injury in fact, emotional distress, and the loss of her home. These damages are in an amount not yet ascertained and to be proven at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

### PRAYER

1.    For restitution of all funds wrongfully obtained;

2.    For the imposition of a constructive trust on said funds;

3.    For attorney's fees and costs of suit incurred herein;

4.    For general and special damages;

5.    For punitive damages; and

Second Amended Complaint

6.      For such other and further relief as the Court deems just and proper.

Dated:10/22/2009

                               /s/Madan Ahluwalia

                              Madan Ahluwalia, Esq.
                              Attorney for Plaintiff
                              SUMAN TOOR

Second Amended Complaint